# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

JERRY L. TORBIT, II                  *

Plaintiff                            *

v                                    *       Civil Action No. RDB-17-758

TYLER SHAFF and                      *
BALTIMORE CO. POLICE DEPT.
                                     *

Defendants
                                   ***

## MEMORANDUM OPINION

In response to the above-entitled civil rights complaint, Defendants move to dismiss or for summary judgment. ECF 15. Plaintiff opposes the motion. ECF 17. The Court finds a hearing unnecessary to determining the matters pending before it. *See* Local Rule 105.6 (D. Md. 2016). For the reasons following, Plaintiff's claims of malicious prosecution and unlawful search and arrest shall be dismissed without prejudice; Defendants' motion shall be granted as to the claim of excessive force; Plaintiff's pending Motions to Amend shall be granted in part and his Motion to Appoint Counsel shall be denied.[1]

## Background

Plaintiff Jerry Torbit, who is currently incarcerated in Jessup Correctional Institution and was incarcerated in the Baltimore County Detention Center at the time he initiated this lawsuit,

---

[1] A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is a discretionary one, and may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). There is no absolute right to appointment of counsel; an indigent claimant must present "exceptional circumstances." *See Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987). Exceptional circumstances exist where a "pro se litigant has a colorable claim but lacks the capacity to present it." *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by *Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989) (holding that 28 U.S.C. § 1915 does not authorize compulsory appointment of counsel). Upon careful consideration of the motions and previous filings by Plaintiff, the Court finds that he has demonstrated the wherewithal to either articulate the legal and factual basis of his claims himself or secure meaningful assistance in doing so. No exceptional circumstances exist that warrant the appointment of an attorney to represent Plaintiff under § 1915(e)(1).

claims Defendants violated his Fourth and Fourteenth Amendment rights in the course of his arrest. Torbit states that on August 18, 2016, Officer Shaff used something called a Pitt maneuver during a car chase which caused the car Torbit was traveling in to "flip 7 times." ECF No. 1 at p. 1. Torbit states he was thrown from the vehicle and sustained the following injuries: broken bones in his toes, leg (femur and hip); damage to his liver and colon; shoulder injury; and facial lacerations. *Id.* at p. 2. He claims the injuries he sustained rendered him disabled and claims entitlement to $350 thousand in "non-economical" damages. *Id.*

Torbit further claims that Shaff committed perjury in the statements made to obtain a search warrant on August 19, 2016. ECF No. 1 at p. 2. In addition, Torbit states that Shaff provided false statements in charging documents and police reports. *Id.*

In a Motion to Amend (ECF No. 12), Torbit seeks to amend the complaint to add as Defendants Baltimore County and the State of Maryland. He also seeks to add a claim for malicious prosecution against Shaff for providing "misrepresented information under the penalty of perjury" in charging documents. *Id.* Torbit further amends his request for relief raising his claim from $350 thousand to $500 thousand and adding a demand for $350 thousand in "compensatory, pecuniary and exemplary damages" as well as a claim of $150 thousand for emotional distress. *Id.* at pp. 2-3.

The Motion to Amend shall be granted to the extent it seeks to amend the request for relief and to add a claim for malicious prosecution, but denied to the extent it seeks to add Baltimore County and the State of Maryland as Defendants. A Motion to Amend is governed by Fed. R. Civ. P. 15(a) which provides that "[a] party may amend its pleading once as a matter of course within 21 days after serving it, or if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion

2

under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15 dictates that "[t]he court should freely give leave when justice so requires." *Id.* Where, as here, the proposed amendment to the complaint appears to be a futility, this Court has the discretion to deny leave to amend. Baltimore County and the State of Maryland are not "persons" within the meaning of 42 U.S.C. §1983[2] and are therefore not proper Defendants. In addition, the State of Maryland is immune from suit under the Eleventh Amendment. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (A state, its agencies and departments are immune from suit in federal court brought by its citizens or the citizens of another state)..

In response to the complaint, Defendant Shaff submits an Affidavit in support of the Motion to Dismiss or for Summary Judgment. ECF No. 15-2. Shaff states that on August 18, 2016, he was on routine patrol with Officer Chih when they were dispatched to the Seven-Eleven Store located at 8601 Liberty Road in Randallstown, Maryland on a report of a "hold-up alarm." *Id.* at ¶ 6. When they arrived on the scene, Shaff and Chih were met by Jasvir Singh and Femi Ogumotoyindo, the victims of the armed robbery. *Id.* at ¶ 7.

Singh told Shaff and Chih that two black males, later identified as Torbit and Ricky Hickman, came into the store and demanded Singh give them all the cash in the register while Hickman pointed a gun at Singh. *Id.* at ¶ 7. Singh stated that Torbit took the cash as well as four cartons of Newport cigarettes and put it into a plastic trash bag. *Id.* Singh and Ogumotoyindo

---

[2] The statute provides that: "Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person with the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured . . ."

3

reported that Torbit and Hickman ran from the store and fled the scene in a gold-colored SUV onto Old Court Road, heading south. *Id.* at ¶ 9.

During the interview of the victims, a gold-colored SUV drove by the store going north on Old Court Road and turning onto Liberty Road. *Id.* at ¶ 10. Both victims reported to Shaff and Chih that the vehicle was the same one that Torbit and Hickman fled in after the robbery. *Id.* Chih and Shaff entered their marked police cars, gave chase, and caught up with the SUV. *Id.* at ¶ 11. It was determined, through search of the registration tags, that the Ford Explorer was registered to Wayne Freeman, later determined to be the driver of the SUV at the time of the pursuit. ECF No. 15 at Ex. 1, p. 8 and Ex. 2, p. 1.

Shaff attempted to initiate a stop of the SUV by turning on the overhead emergency lights and siren on the police car. ECF 15-2 at ¶ 12. Freeman, the driver of the SUV, did not stop but instead accelerated and traveled east on Liberty Road. *Id.* at ¶¶ 12, 13. Shaff was traveling in the lead police car during the pursuit on Liberty Road; Chih was second in line. *Id.* at ¶ 12.

Near the intersection of Liberty Road and Milford Mill Road, Freeman rammed the Ford Explorer into Shaff's police car and Shaff notified dispatch. *See* ECF 15 at Ex. 2, p. 2 (Dispatch transcript). Freeman repeated this action near the intersection of Liberty Road and Brubar Court. ECF 15 at Ex. 1, p. 8. Freeman subsequently lost control of the SUV and crashed. *Id.* Torbit, Hickman, and Freeman were apprehended at the scene of the crash; the money and Newport cigarettes stolen from the store were also recovered at the scene. *Id.* at ¶ 17. Defendants explain that a PIT ("Pursuit Intervention Technique") maneuver is a pursuit tactic where the pursuing car can force a fleeing car to abruptly turn sideways, causing the driver to lose control and stop. ECF 15 at Ex. 3. They deny such a maneuver was utilized in the pursuit of Torbit and his cohorts and Shaff denies that Baltimore County trains its officers to perform such a maneuver.

4

At the time he filed his complaint and Defendants responded to it, Torbit had not yet stood trial on charges of armed robbery. On October 11, 2017, Torbit pled guilty to armed robbery and was sentenced to serve 15 years with 8 years suspended and 3 years of probation. *See State of Maryland v. Jerry Lee Torbit*, Case No. 03K16004692 (Balt. Co. Cir. Ct. 2017) at http://casesearch.courts.state.md.us/inquiry.

## Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal

quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## Discussion

### Malicious Prosecution and Unlawful Search and Arrest

Torbit's claims asserting that Shaff lied in charging documents and in affidavits to support a search warrant as well as his bare-bones claim for malicious prosecution are barred by the holding in *Heck v. Humphrey*, 512 U. S. 477, 487 (1994). That case instructs that claims raised under 42 U.S.C. §1983 which impugn the legality of a criminal conviction are not cognizable unless that conviction is reversed. Clearly, if Torbit were to prove his assertions that Shaff lied to obtain his arrest and subsequent conviction, the validity of Torbit's criminal conviction would be called into question. While Torbit remains free to raise such claims in the context of an appeal of his criminal conviction or a post-conviction petition, to the extent he has not waived such an argument by pleading guilty, he may not do so by virtue of a civil suit for damages. Those claims must be dismissed without prejudice and may not again be raised unless and until Torbit's guilty plea is overturned or otherwise invalidated.

### Excessive Force

Torbit's claim that excessive force was used when he was arrested is not barred by *Heck*, but is without merit. In his Opposition Response Torbit claims that because he was fleeing and "presented no immediate danger to Shaff or anyone else," Shaff acted unreasonably and should have merely noted the license tag number of the getaway vehicle. ECF 17 at p. 7.

Claims of excessive force during an arrest or investigatory stop are examined under the Fourth Amendment's objective reasonableness standard. *See Graham v. Connor*, 490 U. S. 386, 395 (1989), *see also Co. of Los Angeles, Ca. v. Mendez*, \_\_ U.S. \_\_, 137 S. Ct. 1539, 1547 (2017) ("*The* framework for analyzing excessive force claims is set out in *Graham*."). This

6

"requires balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner*, 471 U.S. 1, 8 (1985) (citation omitted). Factors to be included in making this determination include the severity of the crime, whether there is an immediate threat to the safety of the officer or others, and whether the subject is resisting arrest or attempting to flee. *See Graham*, 490 U.S. at 396. The determination is to be made "from the perspective of a reasonable officer on the scene." *Id.* at 387. The Constitution "does not require police to gamble with their lives in the face of a serious threat of harm." *Elliot v. Leavitt*, 99 F.3d 640, 641 (4th Cir. 1996). Further, "the right to make an arrest carries with it the right to use the amount of force that a reasonable officer would think necessary to take the person being arrested into custody." *See Martin v. Gentile*, 849 F.2d 863, 869 (4th Cir. 1988) (citing *Lester v. Chicago*, 830 F.2d 706, 712 (7th Cir. 1987). "Excessive force claims . . . are evaluated for objective reasonableness based upon the information the officers had when the conduct occurred." *Saucier v. Katz*, 533 U.S. 194, 207 (2001).

In the instant case the victims of the robbery identified the SUV as the one that the armed robbery suspects had entered to flee the scene. Shaff and Chih had probable cause to pursue that vehicle for the purpose of arresting its occupants for a felony. The question remains whether the force used was reasonable based on the information they had at the time. The parties dispute what that force entailed.

In support of his claim that Shaff used a PIT maneuver during the car chase, Torbit submits a copy of a forensics report[3] detailing the post-crash scene. ECF 17-1. Damage to the police car driven by Shaff is described as having a cracked driver's side headlight and front

---

[3] The forensics report is not an authenticated document, indicates that it is "page 1 of 2" but there is only one page submitted; and there is no explanation regarding its origin.

7

bumper damage with possible blood[4] on the hood of the car. *Id.* He further states in his affidavit that Shaff "rammed the back of our vehicle numerous times in an attempt to apprehend me." ECF 17-2 at p. 1. Torbit maintains that Shaff simply made-up the story that Freeman rammed his car to cover up his improper use of the PIT maneuver that caused the accident.

In support of the Motion to Dismiss or for Summary Judgment, Defendants provide a copy of a certified transcript of the "Baltimore County Communications Center Talk Group 102 recording of the pursuit of the suspect vehicle wanted for armed robbery" which began at midnight on August 18, 2016 and ended approximately three minutes later on August 19, 2016. ECF 15-4. In the transcript Shaff reports the tag of the vehicle he is pursuing and states "I don't think he's gonna stop." *Id.* at p. 1. He reported the location of the pursuit and stated at the 1:20 mark that "he just rammed me." *Id.* Shaff stated again at 1:30 that "he rammed my car at uh Liberty and Milford." *Id.* at p. 2. Chih notes that they are approaching the Baltimore Beltway (695) and that traffic is medium. *Id.* Chih also reports at the 2:38 mark that "he just 10-50. 10-50 at St. Luke's" and shortly thereafter he requests an ambulance. Torbit does not dispute that the vehicle in which he was a passenger was travelling at a rate of 65 mph, an estimate confirmed in the transcript. *Id.*

At the time Shaff reported via radio transmissions that the fleeing vehicle had rammed his car, there was no accident to explain as Torbit suggests. Shaff was not the cause of the accident; the recklessness involved in the pursuit was limited to Freeman's operation of the get-away vehicle. In any event, this Court concludes that even assuming Shaff employed a PIT maneuver during the pursuit, he is entitled to qualified immunity.

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v.*

---

[4] The report notes that one of the suspects lost an arm in the accident which was given to medics before the forensics technician arrived on the scene. ECF 17-1.

8

*Callahan*, 555 U.S. 223, 231 (2009). "In particular, . . . . qualified immunity protects law officers from 'bad guesses in gray areas' and it ensures that they may be held personally liable only 'for transgressing bright lines.'" *Gomez v. Atkins*, 296 F.3d 253, 261 (4th Cir. 2002) (quoting *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)). The defense provides protection for public officials for mistakes of law, mistakes of fact, or a combination of the two. *See Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting). Qualified immunity is a defense from suit, not simply liability, which is lost if a matter is improperly permitted to go to trial. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Resolution of whether an official is entitled to qualified immunity must be determined "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

In order to determine if a public official is entitled to the protections afforded by qualified immunity, two inquiries must be addressed by this Court. Although the Supreme Court's decision in *Saucier v. Katz*, 533 U.S. 194 (2001) directed a rigid approach to the inquiries involved, the requirement that the two-prong analysis must be "considered in proper sequence" has since been revised. *Katz*, 533 U.S. at 200. Courts are now "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 818.

The first prong is whether ""[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show [that] the officer's conduct violated a constitutional right[.]" *Saucier*, 533 U.S. at 201. If the evidence establishes a violation of a constitutional right, the second prong is to assess whether the right was "clearly established" at the time of the events at issue. *Id.* If the right was not clearly established, the qualified immunity doctrine shields a

defendant officer from liability. The "answer to both *Saucier* questions must be in the affirmative in order for a plaintiff to defeat a . . . motion for summary judgment on qualified immunity grounds." *Henry v. Purnell*, 501 F.3d 374, 377-78 (4th Cir. 2007) (citing *Batten v. Gomez*, 324 F.3d 288, 293-94 (4th Cir. 2003)).

Assuming Shaff's conduct included ramming or bumping the get-away car, that conduct did not violate clearly established rights that a reasonable person would have known. "The 'clearly established' standard . . . requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him." *Dist. of Columbia v. Wesby*, _ U.S. _, 138 S. Ct. 577, 590 (2018). In *Scott v. Harris*, 550 U.S. 372, 384-85 (2007), the Supreme Court found that a police officer's conduct of ramming the car driven by a fleeing suspect where there was a danger presented to other motorists and pedestrians, was reasonable and did not constitute excessive force under the Fourth Amendment. The Court addressed an argument similar to Torbit's claim that Shaff could have avoided the injuries resulting from the accident had he abandoned the pursuit. First, the Court noted that it was the plaintiff-suspect who caused the police officer to have to choose between conduct that may kill or injure numerous bystanders or may kill or injure a single person. *Id.* at 384. Secondly, the Court noted that "[w]hereas [the police officer's] action – ramming respondent off the road – was *certain* to eliminate the risk that respondent posed to the public, ceasing pursuit was not." *Id.* at 385. The reason abandoning pursuit carried with it uncertainty was first, there is no way to clearly communicate to the fleeing suspect that the chase had ended, and second, the Court was "loath to lay down a rule requiring police to allow fleeing suspects to get away whenever they drive *so recklessly* that they put other people's lives in danger." *Id.* (emphasis in original). Similarly, this Court has no problem

concluding that Shaff's conduct was reasonable under the circumstances and that he is entitled to summary judgment in his favor.

The claim as to Baltimore County Police Department also fails. It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). There is nothing alleged in the complaint raising a basis for supervisory liability for the police department. Moreover, the Baltimore County Police Department is not a "person" within the meaning of 42 U.S.C. §1983 and is not amenable to suit under the statute. The claim against the police department must be dismissed.

A separate Order follows.

*February 26, 2018*
Date

*/s/ Richard D. Bennett*
RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE